BLAKE v. BURNETT-HAUERT LBR. CO. et al.

No. 30139. March 2, 1943.

Rehearing Denied March 30, 1943.

*135 P. 2d 325.*

C. E. Dudley, of Antlers, for plaintiff in error.

Tom Finney, of Idabel, and McPherren & Maurer, of Oklahoma City, for defendants in error.

GIBSON, V. C. J. This is an action to cancel a written contract of sale conveying growing timber. Judgment was for defendants, and plaintiff appeals.

The contract in question bore date of September 29, 1924, and was executed by one Richard Bohanon to the Choctaw Lumber Company. Bohanon was a full-blood citizen of the Choctaw Nation, and the lands covered by the contract constituted a portion of his restricted allotment as provided by the acts of Congress. By the terms of the contract Bohanon sold and delivered to said lumber company all the merchantable pine timber of whatsoever kind and character growing on lands therein described, giving to the company ten years' time in which to cut and remove the same, and an additional ten years thereafter for a like purpose upon payment to first party of a specified consideration.

Subsequently, on July 11, 1930, all restrictions on the alienation of the land were removed by proper authority, and on March 1, 1932, plaintiff purchased the same from Bohanon with full knowledge of the aforesaid timber contract.

In May, 1934, the company notified plaintiff of its intention to exercise its option to extend the contract for the second ten-year period as provided therein, and tendered plaintiff the additional agreed consideration. The tender was refused, and the money was thereupon deposited to plaintiff's credit in a certain bank, with due notice to plaintiff.

In 1937 the defendant Burnett-Hauert Lumber Company, which had acquired the interest of the Choctaw Lumber Company in said contract, commenced to cut and remove timber from the premises, and shortly thereafter plaintiff commenced this action to cancel the contract and for an injunction pendente lite.

Plaintiff says the timber contract constituted an encumbrance on the land of a restricted Indian and, not being approved by the Secretary of the Interior, was void by reason of the provisions of sections 2 and 5 of the Act of Congress approved May 27, 1908, 35 Stat. 312.

It has been stipulated that the land was restricted at the time of the execution of the timber contract.

Section 2 of the act, so far as material here, provides that lands of this character belonging to members of the Five Civilized Tribes and from which the restrictions on alienation have not been removed, may be leased by the allottee thereof for a period not to exceed five years, without privilege of renewal, and that such lands may be leased for a period in excess of five years with the approval of the Secretary of the Interior. And section 5 provides as follows:

"That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this Act, which affects the

title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be absolutely null and void."

Defendants concede plaintiff's argument that a lease made for a period in excess of the limitation expressed in said section 2, without approval of the Secretary of the Interior, is invalid. Carter v. McCasland, 131 Okla. 253, 268 P. 706.

But, in our former decisions on this subject we have considered contracts for the sale of timber as not falling within the restrictive acts of Congress. Mitchell-Crittenden Tie Co. v. Crawford, 61 Okla. 191, 160 P. 917; Choctaw Lbr. Co. v. McKeever, 119 Okla. 282, 249 P. 712; Ross v. Choctaw Lbr. Co., 176 Okla. 399, 55 P. 2d 1041.

Congress has never placed specific restrictions on the sale of timber on lands of allottees of the Five Civilized Tribes; nor has it positively sanctioned the sale thereof by restricted Indians. But it has recognized the allottee's inherent right to sell the same in view of the absence of specific government restriction. Under section 16 of the Act of Congress approved June 28, 1898 (30 Stat. 495), it was made unlawful for any person, with certain exceptions, to claim for himself any royalties on minerals or timber from lands of the Five Civilized Tribes, but said section contained the following provision:

"Provided further, That nothing herein contained shall impair the rights of any member of a tribe to dispose of any timber contained in his, her, or their allotment."

And the Act of January 21, 1903, 32 Stat. 774, dealing with the use of timber and stone on lands of the Five Civilized Tribes, contained the following proviso:

"Provided, further, That nothing herein contained shall be construed to prevent allottees from disposing of timber and stone on their allotments, as provided in section sixteen of an Act entitled 'An Act for the protection of the people of the Indian Territory, and for other purposes,' approved June twenty-eighth, eighteen hundred and ninety-eight, from and after the allotment by the Commission to the Five Civilized Tribes."

Growing timber ordinarily may be a part of the realty, and its sale an alienation of a part of the land, but we have heretofore construed the last-mentioned acts as authority or recognition of the right on the part of all allottees to convey the timber separate and apart from the land, notwithstanding the prevailing restrictions on the alienation, the encumbrance or the leasing of the land. In Mitchell-Crittenden Tie Co. v. Crawford, supra, in construing the restrictive acts of Congress, together with the Acts of 1898 and 1903, above, and the interpretation placed thereon by the Department of the Interior for many years, we held that a conveyance by a full-blood citizen of the Five Civilized Tribes of growing timber on his restricted allotment was not void. In that case all restrictive legislation up to and including the Act of April 26, 1906 (34 Stat. 137), was considered. Section 19 of the latter act, so far as material, provides as follows:

"That no full-blood Indian of the Choctaw, Chickasaw, Cherokee, Creek or Seminole Tribes shall have power to alienate, sell, dispose of, or encumber in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this Act, unless such restriction shall, prior to the expiration of said period, be removed by act of Congress."

So far as alienation is concerned, we look upon the provisions of that section as being fully as comprehensive with relation to restrictions as are the provisions of section 5 of the Act of 1908, supra. In the last-cited case it was held that the restricted allottee had the capacity to convey the timber, notwithstanding the restrictive provisions of the Act of 1906. And, referring to that act, the court said further:

"In our opinion the language employed is not sufficiently comprehensive

to operate as a repeal of the provisions of the Acts of 1898 and 1903, supra, or in itself to impose an absolute restraint upon the sale of timber by allottees of the Five Civilized Tribes."

The same may well be said of the 1908 Act.

In Choctaw Lumber Co. v. McKeever, supra, the court had under consideration a timber sale contract executed by a restricted allottee subsequent to the Act of 1908. It was there held as follows:

"An instrument, conveying timber upon the allotment of a full-blood Choctaw Indian which specifies five years for its removal is not void on its face. The allottee having power to convey such timber may fix a reasonable time for its removal, and the question as to whether five years is a reasonable time is a question of fact."

And in Ross v. Choctaw Lumber Co., supra, involving a similar instrument, the court held:

"An instrument conveying the timber on a tract of land, which provides that if the timber is not removed within five years the grantee may extend the period for an additional five years by paying immediately a specified sum of money, is not an absolute conveyance of such timber, but conveys only so much of the timber as may be removed in the original five-year period, or within ten years if the grantee by appropriate and timely action takes advantage of the extension privilege."

We say, however, that there is no restriction placed by law upon the time such contracts may run. The parties themselves may contract for any specified time they may agree upon. It is only where such contracts fail to fix the duration that the courts may interfere to limit the term to a reasonable time. The rule is stated in Mitchell-Crittenden Tie Co. v. Crawford, supra, as follows:

"An instrument conveying standing timber, which specifies no time for its removal, grants a terminable estate in such timber, which may end when a reasonable time for such removal expires. What constitutes such reasonable time is dependent upon the facts and circumstances of the particular case."

A bona fide contract fixing the term in such case is legal and binding on the parties and in that particular must be sustained by the courts.

Plaintiff charges error on the part of the court in receiving certain evidence.

That evidence consisted of the written contract which was offered by defendants and objected to on the ground that the same had been materially altered, and was therefore void for any purpose.

The alleged alteration was in the legal description of the land. The description "SW¼" had been changed to read "NW¼" in order to correctly describe the land. The evidence shows beyond doubt that this alteration occurred prior to the execution and delivery of the contract. There was no error.

There is the further assignment that the court erred in refusing the testimony of plaintiff's witnesses concerning the condition of the roads to and from and upon the land in question. Although plaintiff did not make known the purpose of the testimony at the trial, it is now said that the purpose was to show that defendants could have removed the timber within a reasonable time after the contract was executed. But since we have already said that the question of reasonable time is not material where the parties by valid contract have fixed the term, we must hold that the court did not err in excluding the testimony.

The judgment is affirmed.

CORN, C. J., and BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. OSBORN and WELCH, JJ., dissent. RILEY, J., absent.

WELCH, J. (dissenting). I fully agree that any Choctaw Indian allottee may sell and convey his timber, but I am inclined to the view that this opinion, in final analysis, goes too far in authorizing an encumbrance on restricted Indian lands to continue for a period in violation of section 5 of the Act of Congress of May 27, 1908.